THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| JOHN D. WEAKLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:22-CV-447 |
| ) | |
| CITY OF RICHMOND, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**VSP DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS PURSUANT TO FEDERAL RULE 12(b)(1)**

The Virginia State Police ("VSP") defendants, Jacob Capra[1], Anthony Bradt, and Ridge Duncan[2] (collectively, the "VSP Defendants"), are immune from the state law claims of assault[3] and battery[4] asserted against them by Plaintiff John Weakley, even if all the facts alleged in the Complaint and depicted in the video exhibits to the Complaint are interpreted in a light most favorable to the Plaintiff.

**FACTS AS ALLEGED IN THE COMPLAINT**

In the darkness that began before dawn on June 23, 2020, a group of protestors were assembled on the 900 block of Marshall Street, just outside Richmond City Hall.[5] The protestors called their blockaded stretch of Marshall Street "Reclamation Square." The videos attached to the Complaint show that the Reclamation Square protestors barricaded Marshall Street starting at

---

[1] Jacob Capra is no longer employed by the VSP, but he was a VSP employee during the events described in the Complaint.
[2] Incorrectly named in the caption of the case and throughout the Complaint as "Duncan Ridge."
[3] ECF No. 1, Count IV.
[4] ECF No. 1, Count V.
[5] ECF No. 1, ¶ 3.

1

the intersection where Marshall Street is crossed by 10th Street[6] and that to make the barricade the street protestors stole materials from a nearby construction site,[7] then protestors vandalized the stolen barricades to display their own message.[8]

The bystander video includes the bystander's commentary that she was told by police that police needed to clear the barricade and protestors because the route was used by "cars to get to the hospital."[9] Marshall Street runs among the buildings of VCU Hospital, with the Children's Hospital located at the intersection of 10th and Marshall, just across 10th Street from the protest, and the Emergency Department is located in a building a few blocks further east.[10]

---

[6] The Complaint identifies the area of the protest as "outside Richmond City Hall." ECF No. 1, ¶ 33. The bodycam video submitted by the Plaintiff as Exhibit A, ECF No. 1-1, shows the police on Marshall Street, facing 10th Street, with the street sign visible at the :38 time stamp. Also visible in the first 19 minutes of the bodycam video are the construction barrels and barricades. Courts may take judicial notice of geographical facts that are matters of common knowledge in a jurisdiction particularly when the facts can be gleaned from Google maps and its features. Fed. R. Evid. 201(b); *Feminist Majority Found. v. Hurley*, 911 F.3d 674, 711 n.5 (4th Cir. 2018).

[7] Major construction on a parking deck and a new General Assembly building has been occurring since groundbreaking in August 2017 and continues to this day. *See* General Assembly Building of Virginia, https://www.Gilbaneco.com/project/general-assembly-building-of-virginia/ (last visited July 18, 2022) (Website of contractor for the new General Assembly building). The General Assembly building project stretches along Broad Street from N. 8th Street to Capitol Street. These two blocks are located across Broad Street from Richmond City Hall, located at 900 E. Broad Street.

[8] Glimpses of the construction barricades in the bodycam video in Exhibit A show the barricades have been vandalized with "BLM" spray painted over the original "Road Closed" warning. *See, e.g.*, Exhibit A at time stamp 2:41.

[9] VCU Hospital comprises several buildings located along Marshall Street. VCU Department of Pediatrics is at the intersection where both exhibit videos are taken, at 10th and Marshall. The majority of the hospital buildings are located between N. 11th Street on the west, N. 13th Street to the east, and between Broad Street to the south and East Leigh Street East to the north. The locations of Richmond City Hall and the buildings comprising VCU Hospital are visible on Google Maps. *See* https://www.google.com/maps/search/richmond+city+hall/@37.5406024,-77.431007,18z (last visited July 18, 2022).

[10] These locations for Richmond City Hall and the buildings comprising VCU Hospital are visible on Google Maps. *See* https://www.google.com/maps/search/richmond+city+hall/@37.5406024,-77.431007,18z. Courts may take judicial notice of geographical facts that are matters of common knowledge in a

Law enforcement declared this blockade of Marshall Street was an unlawful assembly and ordered protestors to disperse for at least thirty minutes before taking action.[11] Exhibit A to the Complaint also depicts at least fifteen minutes of warnings, including a final warning that specifically cautioned protestors that law enforcement had deemed the assembly unlawful, that protestors were ordered to disperse, and that if they did not disperse, law enforcement would begin making arrests and using chemical agents.[12] Plaintiff did not disperse in response to the thirty minutes of warnings.[13]

Instead, he stayed and observed police prepare to deploy "what appeared to be a grenade launcher" and he did not leave.[14] Instead, the plaintiff "turned to make eye contact with his friend." *Id.* The video exhibits to the Complaint show that after police issued a warning to disperse because the assembly had been declared unlawful, the crowd began a call and response chant, "Whose street?" "Our street!"[15] As found by the Richmond Circuit Court, law enforcement officers could have reasonably understood that the chant showed the crowd's intention to resist the order to disperse and instead that the crowd would defend their barricade from police efforts to clear the street to permit motor vehicle traffic. *Va. Student Power Network*, 107 Va. Cir. at 151.

Following the final warning, the line of VSP officers in yellow traffic vests and carrying shields began to advance with RPD in all black behind and beside the VSP line.[16] VSP troopers

---

jurisdiction particularly when the facts can be gleaned from Google maps and its features. Fed. R. Evid. 201(b); *Feminist Majority Found. v. Hurley*, 911 F.3d 674, 711 n.5 (4th Cir. 2018).
[11] ECF. No. 1, ¶¶ 36-37.
[12] ECF No. 1-1, timestamp 17:21.
[13] ECF. No. 1, ¶¶ 36-37.
[14] ECF. No. 1, ¶ 8.
[15] *See* ECF No. 1-2, timestamp 1:14.
[16] See ECF 1-2, timestamp :50.

are clearly distinguishable in the video from the RPD officers because the VSP troopers were wearing bright yellow traffic vests with black helmets with white "VSP" lettering.[17] RPD officers were wearing all black. *Id.* The police advanced across 10th Street slowly: it took forty seconds for them to advance to the protestors' barricade.[18] As the VSP line advanced, RPD deployed smoke grenades and other non-lethal munitions. *Id.* It is almost a full minute after VSP removed the protestors' barricade before Plaintiff is hit with the rubber bullet and falls to his hands and knees.[19]

Plaintiff, like many other protestors defending the barricade that night, was dressed to resist non-lethal force. He was wearing a helmet, goggles, a face covering and a sweatshirt, despite the fact the protest took place in June.[20] Many others, including protestors clustered near Plaintiff at the time he was shot with a rubber bullet, were using umbrellas as shield from non-lethal munitions and pepper spray.[21] At least one protestor also had a stick and several protestors had homemade shields.[22]

Plaintiff admits that the protestor with the stick assaulted Frazer and that the assailant also had on a black helmet.[23] Plaintiff asserts that the assailant was wearing shorts, kneepads, and a pink respirator, however, whereas the Plaintiff was wearing jeans.[24] Plaintiff identifies

---

[17] *See, e.g.,* ECF No. 1-2 at timestamp 1:34. VSP officers had shields and helmets with face shields, but no chemical munitions, projectiles, or stun grenades.
[18] ECF No. 1-2, timestamp 1:27.
[19] ECF No. 1-2, timestamp 2:16.
[20] ECF No. 1, ¶ 54.
[21] *See, e.g.,* ECF No. 1-2, timestamp ECF 1-2, timestamp 2:16.
[22] ECF No. 1-1, timestamp 2:40.
[23] ECF No. 1, ¶ 56.
[24] Id.

himself as falling to the street and being dragged away from the protest approximately nine seconds before the assailant attacked Frazer with a stick.[25]

Yet Plaintiff also makes allegations that support the inference that the law enforcement officers who detained and arrested him believed that Plaintiff was the assailant. Frazer asked Weakley where the stick was when Plaintiff was searched forty-five minutes after Plaintiff was shot.[26] After arrest, Plaintiff was charged with "4 counts of felony assault on law enforcement officers."[27]

It is undisputed, however, that Plaintiff's most severe injury was the result of being shot with a rubber bullet to the head. At this stage, the Plaintiff's allegation that the rubber bullet to his head was unrelated to any belief that the Plaintiff was a stick-wielding assailant must be accepted as true. The force used to drag the Plaintiff out of the street and then arrest him, however, appears to be the result of law enforcement officers believing he was intentionally resisting their orders to stand up and leave the area.[28] Plaintiff alleges that at that point he was no longer willfully resisting police orders, but was unable to feel his legs and he was physically unable to comply.[29]

Plaintiff now brings this suit pursuant to 42 U.S.C. § 1983 and Virginia common law. As to the VSP Defendants, Plaintiff alleges a violation of his First Amendment rights of free speech and freedom of assembly (Count I), violation of his Fourteenth Amendment right to bodily integrity (Count II), violation of his Fourth Amendment right to be free of excessive force during

---

[25] ECF No. 1, ¶¶ 59-61.
[26] ECF No. 1, ¶ 47.
[27] ECF No. 1, 50.
[28] ECF No. 1, ¶ 40.
[29] Id.

a seizure and arrest (Count III), common law assault (Count IV), and common law battery (Count V). Count VI, for supervisory liability, is not asserted against the VSP Defendants.

## STANDARD OF REVIEW

Rule 12(b)(1) of the Federal Rules of Civil Procedure "permits a party to move to dismiss an action for lack of subject matter jurisdiction." *Allen v. College of William & Mary*, 245 F. Supp. 2d 777, 782 (E.D. Va. 2003). The burden of proving subject matter jurisdiction rests upon the Plaintiff. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). Thus, a court may dismiss a complaint which fails to allege facts to demonstrate subject matter jurisdiction. *Id*. This Court lacks subject matter jurisdiction over the state law claims in Counts IV and V of the Complaint because the VSP Defendants have statutory immunity under Virginia law from those claims.

## ARGUMENT

In addition to Plaintiff's constitutional law claims, Plaintiff also brings two state law claims for assault and for battery. ECF No. 1, Counts IV and V. For Count IV, alleging assault as the theory of liability, Plaintiff lists the "use of tear gas, OC pepper spray, batons, the leveling and pointing of firearms, and the aggressive advance upon the assembly of protestors" as the acts that give rise to his assault claim. ECF No. 1, ¶ 111.

There is no reasonable dispute that the "Reclamation Square" protest was an unlawful assembly as defined by Virginia Code § 18.2-405. Using barriers to blockade a city street without a permit is a public safety risk that violates Virginia law regarding what is permitted during a peaceable assembly. *See Va. Student Power Network v. City of Richmond,* 107 Va. Cir. 137, 148-49 (Richmond Cir. Ct. Jan. 20, 2021) (citing *Owens v. Commonwealth*, 211 Va. 633 (1971); *United Steelworkers of Am. v. Dalton*, 544 F. Supp. 282 (E.D. Va. 1982)) (holding that the same protest that is the basis of the case at bar "justified [law enforcement defendants] in

both determining the protest was an unlawful assembly and dispersing the crowd"). Protestors who failed to disperse were disobeying a lawful order by law enforcement to leave an unlawful assembly and were no longer exercising their constitutional rights. *Id.*

Under Virginia law, the "sheriff, officer or militia may use such force as is reasonably necessary to disperse [people who are unlawfully or riotously assembled] and to arrest those who fail or refuse to disperse." Va. Code § 18.2-411. The statute authorizes those dispersing the unlawful assembly to use "any other force, which can be made consistently with preservation of life, to induce or force those unlawfully assembled to disperse before an attack is made upon those unlawfully assembled by which their lives may be endangered." *Id.* The General Assembly provided statutory immunity from civil or criminal liability for

> any person authorized to disperse or assist in dispersing a riot or unlawful assembly for any action of such person which was taken after those rioting or unlawfully assembled had been commanded to disperse, and which action was reasonably necessary under all the circumstances to disperse such riot or unlawful assembly or to arrest those who failed or refused to disperse.

Va. Code § 18.2-412.

Under the totality of the circumstances, the "use of tear gas, OC pepper spray, batons, the leveling and pointing of firearms, and the aggressive advance upon the assembly of protestors" (ECF No. 1, ¶ 111) was reasonably necessary to disperse the crowd and to arrest those who did not disperse, including Plaintiff. Plaintiff alleges that the crowd did not respond to thirty minutes of warnings that the assembly was unlawful and that protestors had to disperse. ECF No. 1, ¶ 37. The video exhibits show that in response to the orders to disperse, the crowd simply yelled back at the police, including a call-and-response chant, "Whose streets? Our streets!"[30] When law

---

[30] ECF No. 1-2, timestamp 1:14.

enforcement deployed smoke grenades and rubber bullets, protestors raised homemade shield or used umbrellas as shields.[31] Some protestors even threw smoke grenades back at law enforcement.[32] In the chaos after law enforcement began to actively engage protestors, including Plaintiff, officers were forced to engage in hand-to-hand combat with protestors resisting the use of chemicals or smoke to disburse the crowd.[33] At the very end of the bystander video, a small group of protestors using umbrellas as shields were still lingering at the second set of barriers at the intersection of Marshall and N. 9th Street.[34] Even in the face of allegedly "excessive" force, beyond what Plaintiff alleges is reasonable to disperse the unlawful assembly, protestors continued to linger and confront police rather than peacefully leave the scene.

Under these circumstances, it is difficult to imagine any less force being effective, particularly because the amount of force used was not effective at completely clearing all the protestors and yet the only injury listed in the Complaint is Plaintiff's injury from the rubber bullet, not the force listed that comprises the "assault" count. ECF No. 1, ¶¶ 111, 119-20. It is worth noting that the bystander video shows Weakley among the group of protestors who held their ground as the line of VSP officers approached to clear the barricade and disperse the assembly. See ECF 1-2, timestamp :50 (VSP line begins to advance with RPD in black flanking and behind them deploying OC spray, smoke grenades, and non-lethal munitions). The VSP reaches the barricades forty seconds later and quickly removes the barricade. ECF 1-2, timestamp 1:27. Plaintiff is hit and falls to the ground almost a full minute later, at ECF 1-2, timestamp 2:16.

---

[31] E.g., ECF No. 1-1, timestamp 18:58-19:23.
[32] E.g., ECF 1-2, timestamp 2:18.
[33] E.g., ECF 1-2, timestamp 2:17-2:47.
[34] ECF 1-2, timestamp 2:56.

Plaintiff alleges that he was assaulted because his arrest "lacked probable cause" or because "the force deployed was unreasonable to effectuate an arrest." ECF 1, ¶ 114. But Plaintiff admits he was at the protest a full thirty minutes after being told to disperse. ECF 1, ¶ 36. The video exhibits to the Complaint show that even after the police began to act to disperse the assembly using force, Plaintiff did not leave voluntarily. Plaintiff also admits that he did not obey police commands to stand up to move out of the street after he was hit, "because he was unable to feel his legs." ECF 1, ¶ 40. Although an inability to comply with an officer's command is not resisting arrest, Plaintiff was clearly resisting until he was shot. There is no reason any officer would know that suddenly Plaintiff intended to peacefully comply but was unable to, when just moments before he had been intentionally and willfully standing his ground and disobeying the lawful police order to disperse.

Count V, alleging battery, has a substantially similar analysis, except that the acts alleged supporting the battery claim are specific to the Plaintiff, rather than to the crowd in general. *See* ECF No. 1, ¶¶ 119-20. As to the VSP Defendants, they are alleged to have "grabb[ed], punch[ed], and dragg[ed] Weakley after he fell to the ground in an effort to secure an unlawful arrest." ECF No. 1, ¶ 120. There is nothing in the Complaint that supports the conclusory legal conclusion that Plaintiff's arrest was "unlawful." There is no real dispute that Plaintiff remained at an unlawful assembly after being ordered to disperse and that he was among the protestors standing their ground as the police advanced and attempted to disperse the crowd. Instead, Plaintiff appears to misapprehend the law, believing that protestors are entitled to block passage over a public street adjacent to a hospital. *See* ECF No. 1, ¶¶ 72-74.

Plaintiff also claims he was "unarmed despite defendants' claims to the contrary." ECF No. 1, ¶ 74. Thus, even on the face of the Complaint, there was probable cause for an arrest

based on evidence that the Defendants believed Plaintiff was armed with a stick wielded as a weapon against them. Plaintiff made no representation that Defendants knew he was unarmed or that they knew he was not the protestor who assaulted them. Instead, Plaintiff admits he was wearing a helmet, goggles, and a face covering, ECF No. 1, ¶ 54, and the videos show a smoke-filled and chaotic scene with many protestors who had their faces covered. Even if they did not arrest him for the assault, they had probable cause to arrest him for remaining at an unlawful assembly after having been warned to disperse. Va. Code § 18.2-407. Therefore, they had probable cause to make an arrest and to use the force authorized by statute to do so. *See* Va. Code § 18.2-411.

## **CONCLUSION**

Because Virginia law expressly authorized the actions of the VSP Defendants and the Complaint and the video exhibits make the relevant facts uncontested, the VSP Defendants are entitled to statutory immunity from the state law claims. Therefore, the VSP Defendants respectfully request that this Court dismiss Counts IV and V as asserted against them for lack of subject matter jurisdiction.

Respectfully submitted,

JACOB CAPRA,
ANTHONY BRADT,
and
RIDGE DUNCAN

By: /s/ Erin McNeill
Erin R. McNeill (VSB No. 78816)
Assistant Attorney General
Office of the Attorney General
202 North 9th Street
Richmond, Virginia 23219
Telephone: (804) 692-0598
Facsimile: (804) 371-2087
Email: emcneill@oag.state.va.us

10

Jason Miyares
Attorney General of Virginia

Steven G. Popps
Deputy Attorney General

Jacqueline Hedblom
Senior Assistant Attorney General/Section Chief

## CERTIFICATE OF SERVICE

I hereby certify that on July 19, 2022, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record for the parties.

                                               */s/ Erin R. McNeill*
                                                Erin R. McNeill