IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**JOHN D. WEAKLEY,**

        **Plaintiff,**

v.                                                                Case No.: 3:22cv447

**CITY OF RICHMOND, et al.,**

        **Defendants.**

**<u>PLAINTIFF'S MEMORANDUM IN OPPOSITION TO THE CITY OF RICHMOND'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE 12(b)(6)</u>**

COMES NOW, the Plaintiff, John Weakley, by counsel for his response to the City of Richmond's ("the City") motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and respectfully states as follows:

**INTRODUCTION**

Plaintiff, John D. Weakley, filed a civil rights action seeking relief for Defendants collective violation of his rights secured by the First, Fourth, and Fourteenth Amendments to the Constitution of the United States and made actionable pursuant to 42. U.S.C. §§ 1983 and 1988. Weakley also brought this action to address personal injury suffered at the hands of the defendants under the laws of the Commonwealth of Virginia.

The systemic and seemingly unchecked killing of black/brown men and women at the hands of police prompted a summer of large-scale civil unrest throughout much of the United States in 2020. The murder of George Floyd served to ignite major protests throughout the country, to include Richmond, Virginia. In response to these protests, Richmond Police and Virginia State Police routinely and indiscriminately deployed projectiles against peaceful protestors on multiple

occasions throughout the summer. During the evening of June 23, 2020, John Weakley was engaged in a peaceful, nonviolent protest outside of Richmond City Hall. As they had on multiple occasions before, suddenly, and without warning or reasonable provocation, identified and unidentified members of the Richmond Police Department (hereinafter "RPD") and the Virginia State Police (hereinafter "VSP") deployed chemical agents, lethal and non-lethal projectiles, and stun grenades on the protesting crowd. As a result, plaintiff was shot in the back of the head at close range with what is believed to have been a rubber bullet. He was then beaten, dragged, and arrested on four felony counts of assaulting an officer and one misdemeanor count of unlawful assembly, all of which were later dismissed. The actions of RPD and the VSP caused physical injury to Plaintiff and forced him to abandon the exercise of his First Amendment rights to free speech and assembly.

## **FACTUAL ALLEGATIONS AND CLAIMS**

Plaintiff incorporates the entirety of the Complaint filed in this matter, as if fully pleaded herein, and highlights and references the following facts previously alleged:

On May 25, 2020, George Floyd was murdered at the hands of a Minneapolis, Minnesota police officer. The murder, which was captured on camera and viewed worldwide, sparked a series of daily demonstrations and protests throughout the country. Protests in the City of Richmond occurred at various locations throughout the city, to include Monument Avenue, RPD headquarters, and Richmond City Hall. In response to the protests, RPD and VSP officers repeatedly exercised and deployed unprovoked, unjustified, unreasonable, and unconstitutional force against citizen protestors gathered at these locations throughout the city. The unreasonable force deployed on each of these occasions consisted of chemical agents, rubber bullets, and other arguably non-lethal projectiles. Complaint ¶¶ 20-24.

On June 1, 2020, RPD and VSP officers deployed chemical agents, batons, projectiles, and riot shields against hundreds of protestors gathered peacefully at the Robert E. Lee statue on Monument Avenue. Following a review of this event, RPD Chief Smith, a defendant to this claim, issued a public apology for his officers' unwarranted actions. Mayor Levar Stoney, in agreement with Chief Smith's apology, issued several apologies of his own via social media, press releases, and at a public town hall meeting. Complaint ¶¶ 25-27. Despite the apologies, RPD and VSP utilized the exact same tactics against peaceful protestors on multiple occasions to follow June 1, 2020. Complaint ¶¶29-32. On June 23, 2020, Plaintiff was present with a group of peaceful protestors gathered to hear speeches, discuss unchecked police violence, and other pressing social issues just outside of Richmond City Hall. By all accounts, the protestors made no aggressive movements or advances toward police at any time that evening. The only thing that could be heard from the crowd were chants of protest, all of which were fully protected First Amendment speech. (See video exhibits to Complaint). At some point, RPD and VSP began to order the assembled crowd to disperse. Complaint ¶¶33-36. Approximately 20-30 minutes thereafter, without provocation, RPD and VSP, just as they did on June 1, 14, and 15, 2020, began to deploy chemical agents and fire projectiles at the assembled crowd.[1] As a result, Plaintiff was shot in the back of the head with a rubber bullet fired at close range by Defendant Frazer. Shortly thereafter, Plaintiff was accosted, punched, and dragged by RPD and VSP officers. Complaint 37-42. He brings his claims against the named defendants for the injuries he suffered as a result of their actions.

---

[1] It should be noted that it is not the Plaintiff's position that all assemblies throughout the city during this period were peaceful. There were instances of broken store front windows and vandalization of the entrance of the John Marshall Courts Building that mandated a forceful police response. The assemblies referenced herein, to include the June 23, 2020 assembly where Plaintiff was injured, were all peaceful when RPD and VSP made the decision to deploy weapons into the crowd.

**LEGAL STANDARD OF REVIEW**

The purpose of a motion under Rule 12(b)(6) is to "test the sufficiency of [the] complaint." *Yousseffi v. Renaud,* 794 F.Supp.2d 585, 588 (D. Mass. 2011), *citing Edwards v. Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999). In considering a motion to dismiss for failure to state a claim, a district court may consider the facts alleged, documents attached as exhibits, and documents incorporated by reference in the complaint. *DiFolco v. MSNBC Cable L.L.C.,* 622 F.3d 104 111 (2d Cir. 2010). In its determination, the Court must "accept the well-pleaded allegations of the complaint as true." *Albright v. Oliver,* 510 U.S. 266, 268, 114 S.Ct. 807 (1994). Further, the Court must also "construe factual allegations in the light most favorable to the plaintiff." *Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 783 (4th Cir. 1999). The "issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). "[I]t is well established that . . . the allegations of the complaint should be construed favorably to the pleader." *Id.* "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.*

While a simple recitation of the elements of a cause of action will not suffice, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant[s] are liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (citing *Bell Atlantic Corp. V. Twombly,* 550 U.S. 544 at 556 (2007).

**ARGUMENT**

A. **PLAINTIFF HAS SUFFICIENTLY PLED A FIRST AMENDMENT CLAIM AGAINST THE CITY AND ITS OFFICERS.**

"The First Amendment right to free speech includes not only the affirmative right to

4

speak, but also the right to be free from retaliation by a public official for the exercise of that right." *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 687 (4th Cir. 2000) (*citing ACLU v. Wicomico County*, 999 F.2d 780, 785 (4th Cir. 1993)). A claim for First Amendment retaliation has three elements: (1) the plaintiff engaged in constitutionally protected activity; (2) the defendant took an action that adversely affected that protected activity; and (3) there was a causal relationship between the plaintiff's protected activity and the defendant's conduct. *Suarez*, 202 F.2d at 686-87; *Blankenship v. Manchin*, 471 F.3d 523, 528 (4th Cir. 2006); *Roncales v. Cty. of Henrico*, 451 F. Supp. 3d 480, 495 (E.D. Va. 2020); and *Constantine v. Rectors & Visitors of George Mason Univ*, 411 F.3d 474, 499 (2005).

Defendant City of Richmond argues that Plaintiff's First Amendment claims should fail as a matter of law because the City declared the assembly unlawful pursuant to state statute. This prospect is asserted as if the declaration is per se valid and the police have blanket authority to deploy whatever means they choose, reasonable or not, to effectuate removal of the assembly. Both propositions are incorrect. Use of excessive force to effectuate even a valid arrest supported by probable cause still equates to a violation of one's constitutional rights.

As argued throughout this memorandum, Plaintiff's claim has met all three requirements laid out in *Constantine*. He has clearly alleged a violation of his First Amendment right to assemble and peacefully protest. As it relates to the second prong, the complaint makes it clear that on June 23, he was forced to abandon the exercise of those rights. Third, it was the unprovoked actions of the Defendants who caused him to abandon this right. In pleading the causal connection, Plaintiff must allege 1) that the defendant was aware of him engaging in protected activity, and 2) "some degree of temporal proximity" between the protected activity and the purportedly retaliatory action. *Id*. at 501. In *Constantine*, the 4th Circuit found a four-month period between

5

the protected speech and the retaliatory action to be short enough to allege a causal connection. *Id.* Further, the 4th Circuit, in its holding, discussed precedent finding a causal connection where nine months separated the protected speech and the retaliatory conduct. *Id.* (citing *Price v. Thompson*, 380 F.3d 209, 213 (4th Cir 2004).

Applying these considerations to the instant case, it becomes abundantly clear that Plaintiff has sufficiently pled the causal relationship required for the First Amendment retaliatory claim. The Richmond Defendants were obviously aware of the exercise of the protected speech and assembly, as they were present concurrently. Further the alleged retaliatory action occurred during the protests, which is easily a short enough length of time to establish the "degree of temporal proximity" required under *Constantine.*

Further, as it relates to the retaliation claim, "it [is] clearly established in the law of this Circuit that speech about serious misconduct in a law enforcement agency is protected." *Hunter v. Town of Mocksville,* 789 F.3d 389, 402 (4th Cir. 2015). The First Amendment provides for the right to petition for redress of grievances and "protects a significant amount of verbal criticism and challenge directed at police officers." See City of Houston v. Hill, 482 U.S. 451, 461 (1987); BE & K Constr. Co. v. NLRB, 536 U.S. 516, 524 (2002). Additionally, a host of cases in other circuits have established precedent that allegations of specific retaliatory intent are sufficient to defeat qualified immunity. *See e.g., Walker v. Schwalbe,* 112 F.3d 1127, 1133 (11th Cir. 1997); *Locurto v. Safir,* 264 F.3d 154, 169 (2d Cir. 2001); *Monteiro v. City of Elizabeth,* 436 F.3d 397 (3d Cir. 2006). *See also, United Steelworkers of America v. Dalton,* 544 F.Supp. 282 (E.D. Va. 1982) where this court adopted this same line of reasoning in the context of qualified immunity against First Amendment retaliation claims. Under the facts asserted by Plaintiff, all three elements of *Saurez* and *Constantine* are met. Accordingly, Plaintiff has alleged a violation of a clearly

established constitutional right where his right to free speech in the form of protest was thwarted by the actions of RPD and VSP officers and those in command.

### B. **PLAINTIFF HAS SUFFICIENTLY PLED FACTS TO SUPPORT A SUBSTANTIVE DUE PROCESS CLAIM UNDER THE FOURTEENTH AMENDMENT FOR VIOLATION OF HIS RIGHT TO BODILY INTEGRITY.**

Courts have consistently recognized substantive due process claims for violations of bodily integrity. Plaintiff's claims in the instant case meet the standards prescribed in the precedent established by *Hall v. Tawney*, 621 F.2d 607, 613 (4th Cir. 1980) and its progeny. Although *Hall* outlined relatively stringent standards to substantiate such claims, the cases that follow appear to have recognized such claims absent application of the strict language used by the Fourth Circuit in 1980. In *Hall*, the Fourth Circuit concluded that in determining whether there is support for a possible substantive due process claim it must consider "whether the force applied caused an injury so severe, was so disproportionate to the need presented, and was so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhuman abuse of official power literally shocking to the conscience." *Id.* Seventeen years later, in *Jones v. Wellham*, 104 F.3d 620 (4th Cir. 1997) the Court recognized a substantive due process claim in a woman's rape claim against a police officer asserting that it was not a Fourth Amendment claim but rather a substantive due process claim under the Fourteenth Amendment "not to be subjected by anyone acting under the color of state law to the wanton infliction of physical harm." *Id.* at 628.

In the instant case, the Plaintiff was shot in the head after an RPD officer leveled his weapon at point blank range and took aim at his upper torso. RPD and VSP Defendants acted in concert in their advance on the protestors. At the time, Plaintiff was exercising his rights peaceably and showed no attempt to advance toward police to assault anyone or display violence of any kind.

There was no excuse to deploy the type of force that would result in an individual being shot when he posed no threat to anyone. The response was completely disproportionate to the need presented and any characterization that the force deployed was non-violent is disingenuous. Such force was a wanton infliction of physical harm upon the Plaintiff by those acting under the color of state law and Plaintiff has sufficiently asserted a substantive due process claim for the harm he suffered.

### C. PLAINTIFF HAS SUFFICIENTLY PLEAD A MUNICIPAL LIABILITY CLAIM AGAINST THE CITY OF RICHMOND.

Defendant City of Richmond argues that Plaintiff has not pleaded specific facts showing any official custom or policy with respect to any of the claims in his cause of action. To establish a *Monell* claim against a municipality, a plaintiff must show a custom or practice either through (1) an express policy, such as an ordinance or regulation, (2) the affirmative decisions of policy makers, (3) omissions by such policy makers showing "manifest deliberate indifference to the rights of citizens," or (4) a custom that is "so 'persistent and widespread' and 'so permanent and well settled' as to constitute 'custom or usage' with the force of law." *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999)(*quoting Monell*, 436 U.S. at 691).

Under a theory of custom by condonation, a *Monell* claim can be substantiated where municipal policymakers fail to stop, or correct a widespread pattern of unconstitutional conduct. *Spell v. McDaniel*, 824 F.2d, 1380, 1390 (4th Cir. 1987). Prevailing under this theory requires a showing that policymakers had actual or constructive knowledge of the alleged misconduct and failed to correct it due to their deliberate indifference. *Owens v. Baltimore City State's Attys. Office*, 767 F.3d 379, 402 (4th Cir. 2014) (citing *Spell*, 824 F.3d at 1386-91). Further, knowledge and indifference can be inferred from the extent of the employees' misconduct. *Id*. There is no requirement that [a plaintiff] detail the facts underlying his claims, or that he plead multiple incidents of constitutional violations that may be necessary at later stages to establish the

8

existence of an official policy or custom and causation." *Jordan by Jordan v. Jackson,* 15 F.3d 333, 339 (4th Circuit 1994)(citing *Leatherman v. Tarrant County*, 113 S. Ct. 1160, 1163). Plaintiff must then "fairly attribute the policy and fault for its creation to the municipality" and there must be an affirmative link between the policy or custom and specific violation. *Spell v. McDaniel*, 824 F.2d 1380, 1389 (4th Cir. 1987).

### a. Policy or Custom

In *Owens*, the 4th Circuit Court of Appeals reviewed the dismissal of a *Monell* claim, pursuant to Rule 12(b)(6), in a case where the appellant had brought a cause of action against Baltimore law enforcement officials for withholding exculpatory evidence in criminal proceedings. In appellant's complaint, he merely alleged that "reported and unreported cases from the period of time before and during the events complained of" and "numerous successful [Brady] motions" showed an official policy or custom of knowingly concealing exculpatory evidence. *Owens*, 767 F.3d at 402. The 4th Circuit held that these meager allegations were enough to plausibly support a *Monell* claim that there was an impermissible custom that developed through the deliberate indifference of the Baltimore City Police Department. *Id*.

In *Jordan by. Jordan*, the 4th Circuit made clear that a "bare allegation" that conduct conformed to official policy, custom or practice would be sufficient to survive a motion to dismiss under Rule 12(b)(6). *See Jordan by Jordan*, 15 F.3d at 339-341. The 4th Circuit found support for this position from the Supreme Court of the United States, as well as the 9th Circuit Court of Appeals. *Id.* at 339 (citing *Leatherman*, 113 S. Ct. at 1161-62; *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 624 (9th Cir. 1988)).

In the instant case, Plaintiff has alleged more than a bare allegation of conduct that conformed to an official policy or custom, as required by *Jordan by Jordan*, and has provided

much more detail as to the pattern of misconduct than was the case in *Owens*. Plaintiff's complaint has alleged a detailed pattern of misconduct, including three specific instances of police violence against protestors occurring before the events that give rise to Plaintiff's cause of action. Complaint ¶¶ 23-32. Additionally, the complaint alleges that during this timeline, Defendant Smith apologized for RPD's response to the June 1, 2020 assembly followed by an apology at a public town hall event by Mayor Stoney. Complaint ¶¶ 26-27. The pleaded facts show that the policymakers of the City of Richmond had actual notice of widespread misconduct by RPD officers, coupled with actual knowledge of the need to take action to rectify such conduct. Despite the apologies, the tactics and unprovoked advances on peaceful assemblies continued. Nothing changed except the City's determination to declare these peaceful gatherings unlawful under Virginia law. Instead of reforming the tactics of its officers to comport with the Constitution, the Defendants cloaked their response to peaceful protests under a state statute designed to address violent and unruly assemblies.

Defendant also asserts that Plaintiff failed to allege any other instances (June 1, 14, and 15) where a citizen was subject to excessive force from being struck in the back of the head by a projectile, as if to suggest that such is the standard. It most certainly is not. Plaintiff should not have to allege that someone else was shot in the same manner that he was during a previous gathering to aver that it is "well settled" that a citizen not be subject to the excessive force of being shot, punched, and dragged by police to establish a custom of behavior. Nevertheless, Plaintiff is aware that other citizens were shot in a similar matter during at least one of the previous incidents mentioned. The continuation of this misconduct as alleged, combined with the official apologies from city management, reveal that the City either acted with deliberate indifference to the need to curb constitutional deprivations by police, or such acts amounted to

a custom "so 'persistent and widespread' and 'so permanent and well settled' as to constitute 'custom or usage' with the force of law, or both. Consistent with *Owens*, the facts alleged in the complaint go beyond merely stating a plausible claim, as is required at this stage.

### b. Affirmative Link

Further, the City argues that Plaintiff has not alleged that the custom actually caused any alleged constitutional deprivation. However, Plaintiff has done this at several places throughout his complaint—where he has alleged that police misconduct caused him to abandon the exercise of his rights to free speech and assembly, and where he has alleged injury due to excessive force. *See e.g.*, ¶¶ 33-35, 38-42, 44, 48-49, 63-65, 68, 72-75, 78 and 94-109.

### c. Deliberate Indifference.

Plaintiff has alleged that the defendants' continuation of the custom or policy of launching attacks against peaceful protestors after issuing an apology for those very same tactics amounted to deliberate indifference. At this stage, nothing more is needed. Should the Court determine that more is needed to substantiate this claim, Plaintiff respectfully seeks leave to amend his complaint.

## CONCLUSION

WHEREFORE, for the reasons stated herein, the Plaintiff respectfully requests that the defendant's motion to dismiss be denied.

Respectfully submitted,

JOHN D. WEAKLEY

/s/
Thomas L. Johnson, Jr., VSB# 38814
johnson@bajinjurylaw.com
Christopher L. Anderson, VSB# 35173
anderson@bajinjurylaw.com

        Bricker Anderson & Johnson, PC
        411 East Franklin Street, Suite 504
        Richmond, VA 23219
        (804) 649-2304
        (804) 649-3380 Fax

        Miriam Airington-Fisher, VSB #78260
        mairington@airingtonlaw.com
        Jennifer Quezada, VSB #93716
        jquezada@airingtonlaw.com
        Airington Law, PLLC
        The Colonanade Building
        4050 Innslake Drive
        Suite 190
        Glen Allen, VA 20360
        Telephone: (804) 774-7117
        Facsimile: (804) 597-5424
        *Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of September 2022, the foregoing was electronically filed using the CM/ECF filing system with the Clerk of the Court, and that Notice of Electronic Filing was thereby sent to all counsel of record.